



6212 NE 78th Ct. Suite A, Portland, OR 97218   503/255-5545   F 503/256-3833

2010 JUL 30   AM 11: 45

LODGED_____ REC'D_____
PAID_____ DOCKETED_____

July 28, 2010

Clerk of the Court
United States Bankruptcy Court
1001 SW 5th Ave # 700
Portland, OR 97204

RE:   Case Number 10-37004-tmb7
      Champion Sports Bar, aka G & C Teopfer
      P.O. Box 2872
      La Pine, OR 97739

Please be advised that the dishwashing machine at the above location belongs to Auto-Chlor System and is not to be considered an asset of the Debtor. Enclosed is a copy of our agreement for the equipment.

We have included an original and two copies of this letter and attachments. Please acknowledge your receipt of our notice by return mail in the envelope enclosed.

If you have any questions, please feel free to contact us at the above address or phone.

Thank you for your attention to this matter.

Sincerely,

*Krista Hubbard*

AUTO-CHLOR SYSTEM

Enclosures
Self Addressed Stamped Envelope

# Auto-Chlor SYSTEM
## Dishwashing Machine Agreement

210-1895 (res)

AGREEMENT, made this date _____

between AUTO-CHLOR SYSTEM of  OREGON INC PORTLAND

and  G NC TOEPFER LLC  DBA  CHAMPION SPORTS BAR & GRILL

at  386 N. MAIN ST. UNKNOWN 97754  hereinafter called "Customer."

1. Auto-Chlor System agrees to furnish an automatic dishwashing machine, Serial No. AF-45836, and all Detergent, Rinse Aid and Sanitizing compounds necessary for washing dishes. Any excess Detergent and Sanitizing compounds used will be charged to Customer at current prices and Customer further agrees to return all empty chemical containers or pay for them at current prices. Customer agrees to pay a fixed amount of $175.00 at the beginning of each four (4) week period. Customer further agrees to pay an additional amount of 6.9 cents per cycle for all cycles washed in excess of 1,000 during the four (4) week period (determined by counter attached to machine). Customer agrees to pay applicable sales taxes. This agreement shall last for 65 four-week periods (five years). At the end of the total term, this agreement automatically renews itself for another period of 52 weeks on each annual anniversary unless either party gives the other party at least two four-week periods (56 days) notice in writing of its election not to renew the agreement

175   1600   6.9

2. Auto-Chlor System reserves the right to adjust prices if necessary. However, if Auto-Chlor System adjusts prices, the Customer may terminate this agreement by giving Auto-Chlor System two four-week periods (56 days) notice in writing to that effect, so long as that notice is given within twenty-eight (28) days after the price increase takes effect. If customer becomes delinquent in payment, Auto-Chlor System may, at its option, elect to interrupt the operation of the automatic dishwashing machine without notice, and/or, may elect to terminate this agreement by giving the customer seven days written notice of its election to do so. Upon such election, Customer shall owe Auto-Chlor System all back payments plus liquidated damages of the fixed amount and for the term set forth in paragraph 1 above. Upon Auto-Chlor System's election to terminate this agreement for non-payment, the Customer agrees voluntarily to surrender possession of the automatic dishwashing machine to Auto-Chlor System, and Auto-Chlor System shall have the right to remove the automatic dishwashing machine from the Customer's premises. Auto-Chlor System's election to terminate should not be construed as a waiver of any other rights Auto-Chlor System may have under this Agreement.

3. Auto-Chlor System will deliver the machine to Customer's place of business and will advise as to installation of the unit but Customer must arrange for necessary plumbing connections, sheet metal work, electrical work and racks at his own expense. Auto-Chlor System will thoroughly service the machine at regular intervals and supply all parts necessary for proper maintenance. Emergency service will be furnished free of charge.

4. The automatic dishwashing machine shall remain the property of Auto-Chlor System and Customer shall not transfer or encumber the machine, deliberately deface or damage the machine, assign this agreement, remove, alter or deface any numbers or description of the machine, or remove the machine from the location specified above or permit anyone other than its regular employees in the regular course of its business to use the machine.

5. Auto-Chlor System shall not be held liable for any damages by reason of failure of equipment to operate or faulty operation of equipment, nor be responsible for any direct consequential damage or losses resulting from the use or operation of furnished equipment.

6. In the event that it becomes necessary for Auto-Chlor System to employ attorney(s) to enforce collection of the sums due hereunder, or to enforce any of the agreements herein contained or to remove the dishwashing machine, Customer agrees to pay the reasonable attorney's fees, costs and expenses incurred by Auto-Chlor System in connection therewith. Should any part of this agreement be deemed unenforceable by a Court, the remainder of this Agreement remains in full force and effect

7. Should Customer disconnect or remove automatic dishwashing machine or otherwise attempt to unilaterally terminate this agreement, except as set forth above, then Customer shall remain responsible for the payment of the fixed amount set forth above for the entire term of this Agreement.

8. Customer agrees to provide Auto-Chlor System with the name and address of the owner of the property upon which Customer's business is located and inform Auto-Chlor System of any change of ownership of the property so that Auto-Chlor System can give written notice to the landlord of Auto-Chlor System's ownership of the automatic dishwashing machine.

9. Auto-Chlor System may impose an energy surcharge on each invoice to offset petroleum or utility based increases in its cost of goods, vendor or transport energy surcharges, and/or fuel cost increases. Energy surcharge fees will not be imposed in any markets where the retail cost average of Regular Gasoline is below $2.00 per gallon or the retail cost average of Diesel Fuel is below $2.00 per gallon. Energy surcharges may be adjusted periodically depending on market conditions.

CHAMPION SPORTS BAR & GRILL
Customer's Trade Name

by (signature) [signed]
GREG TOEPFER   MEMBER
Print Name & Title

541-447-1980
Customer's Phone Number

Customer's Federal ID# (SS# or EIN)
LLC
Type-Sole Prop., Partnership, or Corp.

Auto-Chlor System of OREGON INC PORTLAND

by (signature) Bucy Wolfe
503-255-1040
Local Sales & Service Phone Number

JOE _____ NAVER
Customer's Building Owner's Name

Customer's Building Owner's Address
541-419-7230
Customer's Building Owner's Phone Number

## Guaranty

For consideration received, the undersigned ("Guarantor") hereby guarantees to Lessor timely payment and full performance by Lessee of all obligations of Lessee under the above lease including expenses of collection thereof, including attorney's fees and court costs and also of all expenses including attorney's fees and court costs incurred in enforcing this guaranty. Guarantor further authorizes Lessor to investigate Guarantor's credit capacity and history Lessor and Lessee may by subsequent agreement add, delete, increase, decrease, or otherwise alter any of their rights and obligations as to each other without notice to or consent from guarantor and without in any way affecting the liability of Guarantor hereunder, nor shall Guarantor's liability be affected by Lessee's assignment of the lease or sublease of any Equipment. Notice of acceptance of this guaranty as well as all demands, presentments, notices of protest and notices of every kind or nature including those of any action or nonaction on the part of Lessee, Lessor or any other party are hereby waived upon any default of Lessee. Lessor may, at its option proceed directly and at once, without notice against Guarantor to collect and recover the full amount hereby guaranteed or any portion thereof, without proceeding against Lessee or any other person or exercising of any other remedy available to Lessor whatsoever. Guarantor hereby waives the pleading of any statute of limitations as a defense to Guarantor's obligations hereunder to the full extent permitted by law. The invalidity or unenforceability of the above lease as to Lessee for whatever reason shall not affect the enforceability of this guaranty. If more than one guarantor, obligation of each shall be joint and several.

If the equipment is not returned at the end of the term of the lease, or if the equipment is not returned after Lessee has defaulted in any manner specified in the lease, and has failed to cure such default after a reasonable period of time, the undersigned personally guarantees the fair market value of said equipment at the commencement of the lease which is $_____, to be decreased _____% for each month of the lease.

Dated as of the date of the lease

[signed Bucy Wolfe]
WITNESS

GUARANTOR (Individual) SIGNATURE
GREG TOEPFER
GUARANTOR (Individual) PRINT

A45-WC-20080908